**IN THE UNITED STATES DISTRICT COURT**

**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| CARMALITA TAYLOR THOMAS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 1:16-cv-3730 |
| | ) | |
| THE CITY UNIVERSITY OF NEW YORK | ) | COMPLA I NT |
| Defendant. | ) | |
| | ) | JURY TRIAL DEMAND |
| _____ | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 to correct unlawful employment practices on the basis of Plaintiff's race in violation of Title VII of the Civil Rights Act of 1964, and to provide appropriate relief to an employee who was adversely affected by such practices. This is also an action under the Age Discrimination in Employment Act (ADEA) to correct unlawful employment practices on the basis of Plaintiff's age, and to provide appropriate relief to an employee who was adversely affected by such practices. As alleged with greater particularity herein-below, Plaintiff alleges that Defendant, by and through its authorized agents, discriminated against Plaintiff Carmalita Taylor Thomas ("Plaintiff") when it subjected her to adverse consequences in employment due to her race, age, and in retaliation for having lawfully opposed such racial and age discrimination. Defendant also subjected Plaintiff to a hostile work environment in a manner to be further described herein-below.

## JURISDICTION AND VENUE

1.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343

and 1345.

2.     This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of

1964, as amended, 42 U.S.C. 2000e, et seq. ("Title VII") and pursuant to the Age

Discrimination in Employment Act of 1967 ("ADEA"), and 29 U.S.C. § 621, et seq.

3.     The employment practices alleged to be unlawful were committed within the jurisdiction

of the United States District Court for the Southern District of New York.

## PARTIES

4.     Plaintiff, Carmalita Taylor Thomas ("Plaintiff"), is an individual African-American

female, currently a resident of New Rochelle, New York in Westchester County, and is a former

employee of Defendant The City University of New York, who was 58 years of age at the time

of the discrimination and retaliation alleged herein.

5.     The City University of New York (the "Employer" or "Defendant" or "CUNY"),

employed Plaintiff at relevant times hereto, and has continuously operated as The City

University of New York, a public university system of New York City, and the largest urban

university in the United States, operating with a budget estimated to be in excess of $3 Billion.

6.     CUNY is based in New York City, at 217 East 42 St, New York, NY 10017, where it

employed Plaintiff, at relevant times, within the jurisdiction of the Federal Court, Southern

District, New York, where the events leading to the instant cause of action occurred. CUNY has

continuously had at least 15 employees or more.

## STATEMENT OF CLAIMS

7.     More than thirty days prior to the institution of this lawsuit, Plaintiff Carmalita Taylor

Thomas filed a charge with the New York State Division of Human Rights, which was dual filed

with the EEOC, alleging discrimination by Defendant Employer on the basis of Plaintiff's

2

race/color, and age as well as for retaliation for engaging in protective activities. All other conditions precedent to the institution of this lawsuit have been fulfilled, including that Plaintiff received her "Right To Sue" Letter from the Equal Employment Opportunity Commission within 90 days prior to the filing of this action. (Right To Sue Letter attached as Plaintiff's Exhibit "**A**" hereto).

8.      Plaintiff began working for CUNY as an Adjunct Lecturer in 2006 and served as a full-time Substitute Lecturer in 2007-2008 and 2013-2014.

9.      In a letter-memorandum sent to Plaintiff by Defendant dated April 22, 2015, by and through its authorized agent, C. Alicia Georges, the Nursing Department Chair, Plaintiff was informed that Lehman College of Nursing (one of the several CUNY-affiliated colleges) would not re-appoint Plaintiff to her position as Lecturer at the College.

10.     Defendant's decision not to re-appoint Plaintiff to the position of full time Substitute Lecturer was motivated by the fact that Plaintiff had been the victim of racial discrimination of the worst kind, and had complained to the appropriate personnel at CUNY about said racial discrimination and hostile work environment.

11.     More specifically, "Patrick G.", one of Plaintiff's students during the school year preceding her non-reappointment repeatedly harassed and intimidated Plaintiff, going so far as to repeatedly refer to Plaintiff as a "nigger".

12.     On one occasion during that same school year, Patrick G. warned Plaintiff that he would not allow "a nigger like her prevent him from achieving his goals." (Paraphrased).

13.     On many occasions, too numerous to isolate herein, Plaintiff was the victim of harassment, physical intimidation and racial hostility from this student, Patrick G.

14.     At all times relevant hereto, Plaintiff performed her job as Lecturer satisfactorily,

notwithstanding Patrick G.'s claim to the contrary.

15.     In light of Patrick G.'s conduct, which was extreme, outrageous and racially motivated discrimination, Plaintiff duly reported the student's behavior to CUNY Professor Akan, Director of Undergraduate Nursing at the time.

16.      Plaintiff also duly and timely complained about the foregoing discrimination and racially hostile work environment to Professor Georges, then the Department of Nursing Chairperson, during which she expressed fear for her physical wellbeing, as well as having been deeply offended by the repeated instances of racial discrimination and harassment.

17.     Amazingly, Defendant CUNY, by and through the Chairperson, represented to Plaintiff that there was nothing they could do to assist or protect her because there was no direct evidence, such as a recording, to prove that she had been subject to the foregoing discrimination and harassment.

18.     Rather than to adequately protect Plaintiff, a Lecturer and member of the Adjunct faculty of CUNY, Defendant instead chose to punish Plaintiff for complaining about her racially hostile work environment by refusing to re-appoint Plaintiff to the job she performed at all times relevant hereto in a satisfactory manner.

19.     Prior to receiving the non-reappointment letter of April 22, 2015, Plaintiff had complained to CUNY about the racial and violent hostilities she had experienced, including another instance in which Patrick G. called Plaintiff a "nigger bitch" to her face, and warned her that if she failed him, Plaintiff would somehow experience his wrath of anger and retribution.

20.     Patrick G. also warned Plaintiff that if she failed him in her course, that he would ruin her career in nursing by causing her to be fired.

21.     Each and every such comment was unwelcome and highly offensive to Plaintiff, who

feared for her physical wellbeing, at all times she was forced to be in any proximity to this student.

22.     When Plaintiff complained about this disgusting and racially offensive hostile work environment for a second time in early 2015, she was once again told by Professor Georges that unless she had direct proof of the allegations relating to Patrick G., there was nothing that could be done to protect Plaintiff.

23.     Notwithstanding that Plaintiff had even emphasized to Professor Georges that she felt the student in question presented a physical threat to her, CUNY did absolutely nothing to protect Plaintiff from further harm and abuse.

24.     Shortly thereafter, Professor Georges had the audacity to inform Plaintiff that as a result of a letter written by Patrick G. complaining about Plaintiff's performance as a Professor, the school had decided to terminate her teaching assignment and to not re-appoint her.

25.     At or around the same time, CUNY also failed to protect Plaintiff after she also complained about harassment from another student in her class who was repeatedly threatening to sue Plaintiff if she should give him a failing grade. Plaintiff felt these threats were worrisome, and felt her safety was compromised as a 58 year old Professor. CUNY did nothing to protect her.

26.     Plaintiff was once again advised by the school's Chief Counsel that unless she brought to him direct evidence of harassment or abuse, her word would not be accepted, and the school would do nothing to intervene. Thus, this second harassing student was permitted to remain in Plaintiff's class, along with Patrick G. despite continued harassment.

27.     Shortly after Patrick G. submitted his Complaint letter concerning Plaintiff, Plaintiff was advised of her non-reappointment. No hearing was held at which the veracity of the student's

allegations could be tested. Rather, CUNY acted on the complaints of the very student who had discriminated against Plaintiff, and discriminated against Plaintiff in so doing.

28.    Plaintiff's younger colleagues, some of whom were similarly situated, were treated more favorably than Plaintiff in terms and conditions of employment, including that they were provided with adequate security, and that they were not terminated or subject to non-reappointment when students filed frivolous complaints.

29.    In addition, in information and belief, several faculty members younger than Plaintiff have received the benefit of a hearing prior to suffering adverse employment decisions, when confronted with similar allegations by students.

30.    Inasmuch as Plaintiff was subjected to disparate treatment as compared to similarly situated younger colleagues in similar circumstances, Plaintiff was discriminated against not only on the basis of race, but on age as well.

31.    Defendant's non-reappointment of Plaintiff was also retaliatory inasmuch said adverse employment action was temporally proximate to her repeated complaints about a racially hostile environment.

32.    The effect of the practices complained of herein-above has been to deprive Plaintiff of equal employment opportunity and to otherwise adversely affect her status as an employee, because of her race and age.

33.    The unlawful employment practices complained of above, including retaliation, age and racial discrimination, and ratification of discrimination were intentional and were accomplished with malice and a cold and malignant heart, for which punitive damages at the highest statutory amount are warranted.

34.    As a result of the discrimination described herein-above, Plaintiff lost wages and has

suffered other remunerative harm in an amount to exceed the jurisdictional limits of this court, to be proven at or before trial.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant Employer, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from discriminating against qualified individuals due to their race, age or from retaliating against such individuals who lawfully oppose discrimination in the workplace.

B.      Order Defendant Employer to institute and carry out policies, practices, and programs which provide equal employment opportunities to employees regardless of their race, or age and which will have the effect of eradicating the effects of its past and present unlawful employment practices.

C.      Order Defendant Employer to make whole Plaintiff Carmalita Taylor Thomas by providing appropriate back-pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices.

D.      Order Defendant Employer to make whole Plaintiff Carmalita Taylor Thomas by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described herein-above, including job search expenses, relocation expenses, and medical expenses, attorney's fees and all other out of pocket  and anticipated expenses in amounts to be determined at trial.

E.      Order Defendant Employer to make whole Plaintiff Carmalita Taylor Thomas by providing compensation for past and future nonpecuniary losses resulting from the unlawful

practices complained of herein-above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

F.      Order Defendant Employer to pay Plaintiff Carmalita Taylor Thomas individual punitive damages for its malicious and reckless conduct, as described herein-above, in amounts to be determined at trial.

G.      Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMAND

The Plaintiff requests a jury trial on all questions of fact raised by its complaint.

Respectfully Submitted,


S:/ James D. Hartt
**JAMES D. HARTT, ESQ., Bar #516129**
**Attorney For Plaintiff**
**70 Linden Oaks, Third Floor**
 **Rochester, NY 14625**
**Telephone: (585) 490-7100**
 **Fax: (716) 299-2006**


ORIGINAL of the foregoing was
filed this 19th Day of May,
2016 with: The Clerk of the Federal
District Court, Southern District,
New York.

8